THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK

*v.*

ELIZABETH HOPPER et al.

1. The liability of an heir for the engagements of his ancestor is a legal
liability, enforceable only by an action at law.

2. A decree in equity, except it is founded on a right or cause of action
which makes the decree a lien, does not bind lands, unless such efficacy is given
to it by the statute.

3. A decree for deficiency does not bind the lands of the debtor as a lien
until the court has, after sale, ascertained the amount of the deficit, and made
an order or decree fixing its amount.

---

On hearing on demurrer.

*Mr. Elwood C. Harris,* for demurrants.

*Mr. E. D. Gillmore,* for complainants.

VAN FLEET, V. C.

The defendants deny, by general demurrer, that the facts stated
in the complainants' bill make a case which entitle them to the

relief they ask. The following are the material facts stated in the bill: Thomas Hopper made his bond to the complainants, in January, 1872, conditioned for the payment of $4,500 on the 1st of March, 1873; the payment of his bond was secured by a mortgage on real estate executed by him and his wife; this mortgage was subsequently foreclosed, a final decree being entered thereon, in this court, on the 27th of January, 1880; the final decree contained a clause, adjudging, that in case the mortgaged premises should not be sold for a sum sufficient to pay the amount decreed to be due on the mortgage, Hopper should stand liable for the payment of the deficiency. The mortgaged premises were sold, in May, 1880, under a *fieri facias* issued upon the final decree for $2,000, leaving a deficiency of over $3,000, " as appears," as the bill states, " by the sheriff's return to the said writ of *fieri facias*, now on file in this court." Hopper died intestate in 1882; he possessed no personal property at the time of his death, but held title to certain real estate situate in the city of Newark; he acquired title to this real estate prior to the time the final decree was entered in the foreclosure suit; no administration has been granted upon his estate; he left a widow and eight children; no order or decree has been made fixing or ascertaining the amount of the deficiency for which Hopper was liable. The defendants to this suit are the widow and children of Hopper. The relief which the complainants ask is, that the decree, suit and proceedings against Hopper, which became abated by his death, may be revived against the defendants, and that they may be decreed to be in the same plight and condition that they were at the time of Hopper's death, and that the complainants may have the same benefit of them, against the defendants, in respect to the lands descended, that they could have against Hopper, if he were living, and that the decree for the payment of deficiency may be enforced by a sale of the lands descended, under the process of this court.

The ground on which the complainants rest their right to maintain this action is, that their debt is a lien on the lands which, on the death of Hopper, descended to his heirs-at-law. Unless this claim is found to be true, I think it must be admitted,

that the bill does not state a single fact which lays the least foundation for equity cognizance. Heirs, under our statute, are, to the extent of the value of lands descended, liable for the engagements of their ancestor, even to the extent of being answerable for damages resulting from a breach of their ancestor's covenant. *New Jersey Ins. Co.* v. *Meeker, 8 Vr. 282.* But their liability is purely legal, and enforceable only by an action at law. The argument which the complainants advance to maintain their proposition that their debt is a lien, is, not that the decree adjudging, that in case the mortgaged premises should not be sold for a sum sufficient to pay the mortgage debt, Hopper should stand liable for the payment of the deficiency, created a lien on the lands in question immediately on its entry, but they say, such decree having determined the fact of his liability, that the moment the mortgaged premises were sold, and it was thus demonstrated that a sufficient sum could not be realized, by their sale, to pay the mortgage debt, and the amount of the deficiency having been ascertained and fixed by the sale, so much of their debt as the net proceeds of the sale did not pay, became at once, in virtue of the final decree, and without further or other judicial action, a lien on all the lands which their debtor then owned. A decree in equity, except it is founded on a right or cause of action which makes it a lien, does not bind lands, unless such efficacy is given to it by statute. Our statute makes decrees of a certain class liens on land. The fifty-sixth section of the act respecting the court of chancery, declares in substance, that all decrees and orders of that court, whereby any sum of money shall be ordered to be paid by one person to another, shall have the force, operation and effect of a judgment at law in the supreme court, provided, that no such decree shall, as against a person not a party thereto, become a lien on any lands not described either in the decree or the bill on which it is founded, until an abstract of such decree shall have been filed and recorded in the office of the clerk of the supreme court. *Rev. p. 113.* This statute is the only foundation on which a claim to a lien in this case can rest. The complainants have, unquestionably, a lien on the lands of which Hopper died seized, in common with

his other creditors, in virtue of the statute making the lands of a decedent liable for the payment of his debts. *Haston* v. *Castner, 4 Stew. Eq. 697.* But this action is not founded on that right of lien, nor is it shown or pretended that such right cannot, in this instance, be fully wrought and adequately enforced in the ordinary legal method, and without the aid of this court.

The statute above quoted furnishes the test by which the right claimed by the complainants must be tried, and that test is, Has this court made a decree whereby Hopper was ordered to pay a sum of money to the complainants? In view of the statements of the complainants' bill, it seems to me, to state the question is to decide it. The only decree the court has made is one fixing Hopper's liability for deficiency, in case a deficiency should thereafter occur, and this the court did, under a practice peculiar to this class of cases, before a right of action for deficiency had accrued, and before the fact, on which Hopper's liability to such an action depended, had occurred, but the decree neither fixed a sum to be paid, nor ordered Hopper to pay a sum. The court has not, as yet, ascertained that a deficiency exists, nor ordered Hopper to pay it. The fact may be that a deficiency does exist, and that its exact amount may be proved by record evidence, but until the fact that a deficiency does exist has been judicially ascertained and declared, and its amount has been determined by the court, and the judgment of the court has been put in the form of a decree or an order, it would seem to be so plain as to be absolutely undeniable, that there is no decree or order in the case which can have the force, operation and effect of a judgment at law.

Hopper's liability was purely legal. He was the maker of the bond which the mortgage foreclosed was given to secure. The only authority which this court ever possessed to enforce a pure legal liability, in a foreclosure suit, by means of a judgment *in personam*, was that conferred by the statute of 1866, which declared, that it should be lawful for the chancellor, in any foreclosure suit, to decree the payment of any excess of the mortgage debt, above the net proceeds of sale, by any of the parties to such suit who might be liable at law for the payment of the

Mutual Life Ins. Co. v. Hopper.

same. *Rev. p. 118 § 76.* Doubts have been suggested whether this act did not attempt to transfer to the chancellor judicial power, which, by the constitution, is vested exclusively in the common law courts; but, assuming the act to be valid, it is clear, that it does not give the chancellor power to enforce a liability for a deficiency until a deficiency exists. The controlling words of the act, it will be observed, are, " to decree the payment of any excess of the mortgage debt, above the net proceeds of sale," so that until it has been demonstrated by a sale of the mortgaged premises, that a deficit exists, the court cannot know the amount of the deficiency, nor decree its payment. Such, I understand, to be the construction which this statute has already received. *Bell* v. *Gilmore, 10 C. E. Gr. 104; Mutual Life Insurance Co.* v. *Southard, Id. 337.* Chancellor Runyon, in the case last cited, said : " The practice of this court, under decrees for deficiency, is to follow the decree by an order after sale, reciting the proceedings under the execution, and the existence and amount of the deficiency, as ascertained by the officer by whom the writs were executed, and an award of execution, to make the amount with interest and the costs of the order and the last-mentioned writ. The first decree in such cases is an inchoate decree merely. Until the excess, if any, of the mortgage debt, over the net proceeds of sale, had been ascertained, it could not have the force, effect and operation of a judgment at law. The power which the statute confers is to make a personal decree for the excess." To the same effect is the decision of the supreme court in *Dawes* v. *Wheeler, 16 Vr. 67.* It was there expressly held, that a decree in a foreclosure case did not become a decree for the payment of money, within the meaning of the fifty-sixth section of the chancery act, so that an abstract of it could be filed in the office of the clerk of the supreme court, until the chancellor had ascertained the amount of the deficiency, and made an adverse decree finding its amount.

The demurrers must be sustained, with costs.